Filed 12/3/24  P. v. Najdawi CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099913 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE005575) |
| v. | |
| TEYSEER ZAID NAJDAWI, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Teyseer Zaid Najdawi asked this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  We will affirm.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was charged in June 2019 by way of an amended information with battery on a nonconfined person by a prisoner.  (Pen. Code, § 4501.5; statutory section citations that follow are to the Penal Code unless otherwise stated.)  It was alleged that defendant had a prior strike, based on a 2011 conviction for murder.  (§§ 667, subds. (b)-

1

(i), 1170.12.)  Three aggravating factors were alleged.  (Cal. Rules of Court, rules 4.421(a)(1), 4.421(b)(1), 4.421(b)(3)); rules citations that follow are to the California Rules of Court unless otherwise stated.)

In December 2022, defense counsel and the prosecution filed a stipulated statement noting that defendant was currently being prosecuted in Kern County case No. DF015855A (case No. 15855A) (case No. 15855A is not at issue in this appeal).  In case No. 15855A, defense counsel had twice declared a doubt as to defendant's competency to stand trial.  (§ 1367 et seq.)  The first time, the trial court found defendant not competent to stand trial and referred defendant for competency training.  Defendant was subsequently found competent to stand trial, and criminal proceedings were reinstated.  His counsel then declared a doubt again, and an evaluating psychologist opined that he was incompetent.  In November 2022, the trial court again found defendant was not competent to stand trial and referred defendant for competency training to the Department of State Hospitals or the prison psychiatric inpatient program.

Accordingly, in the instant case, defense counsel declared a doubt as to defendant's competency to stand trial.  Both defense counsel and the prosecution asked the trial court to suspend proceedings and consider the issue of defendant's current competency.  The statement included a copy of the psychologist report prepared in case No. 15855A.  The parties asked the trial court to issue the same placement order as in case No. 15855A.

Later that month, the trial court in this matter found defendant mentally incompetent to stand trial and suspended proceedings.  (§ 1367 et seq.)  As requested by the parties, the trial court referred defendant to the California Department of State Hospitals or the prison psychiatric inpatient program.

In May 2023, the trial court received a report saying defendant had been restored to competency.  In a hearing later that month, the trial court found defendant was competent to stand trial and reinstated criminal proceedings.

2

During a pretrial conference in October 2023, the trial court granted defendant's request to bifurcate proceedings regarding the aggravating factors and the prior strikes. Defendant also requested that, if he were to be shackled, he be secured to the chair by his waist. This would (1) allow him to have his hands and legs free and (2) permit any chains to be tucked in and not visible to the jury. The prosecution did not object, and the court granted this request. Prior to voir dire, defense counsel confirmed that defendant was waist-chained to the chair and there were no visible chains, and the court ordered the deputies to remove the handcuffs.

During voir dire, the trial court denied the prosecution's request to dismiss two jurors for cause. And, neither party exercised any peremptory challenges to prospective jurors.

On the morning of June 5, 2019, Correctional Officer Philip McNamara was checking inmates with a wand metal detector prior to yard release. Suddenly, without any warning, defendant struck Officer McNamara in the mouth with a closed fist. Officer McNamara pushed defendant to the ground and ordered defendant to stop resisting, but defendant continued to try to strike him. As defendant continued to resist, Officer McNamara struck defendant again three more times. Eventually, Officer McNamara and other officers were able to restrain defendant. As a result of the incident, Officer McNamara suffered bruising and swelling on his mouth, as well as back pain and headaches. The jury was shown photographs of Officer McNamara's injuries. Officer McNamara had not had any prior interactions with defendant that day.

Defendant testified at trial that he punched Officer McNamara in the face during the incident. Defendant acknowledged that, before defendant punched him, Officer McNamara had not struck or verbally threatened defendant.

Defendant had consumed methamphetamine that morning and believed his life was in danger from other inmates. Defendant said another inmate owed him money. In addition, according to defendant, his cell had been "gassed" while he was sleeping that

3

morning, although he did not know what the substance was, and there was no residue left over from any spraying. Defendant claimed officers regularly gassed his cell while he was sleeping, causing his ears to ring and headaches. In addition, officers had previously assaulted him in 2013, although nothing had happened to him since. Defendant also said someone had tried to kill him when he was housed at a different prison. Defendant claimed he had at one point gotten into a disagreement with Officer McNamara over defendant's personal property. Although defendant did not fear that any of the officers present on June 5 would hurt him, he wanted to remove himself from the environment. So, he punched Officer McNamara, knowing this would result in him being assigned to a different prison housing unit.

During his testimony, defendant also acknowledged he had a 2011 conviction for murder, and he was incarcerated at the time of the incident. He also had a 2012 conviction for moral turpitude.

At the close of evidence, over defendant's objection, the trial court ruled it would no longer be bifurcating proceedings regarding the aggravating factors, the prior strike, and whether defendant was incarcerated at the time of the incident (which was a required element of the crime). The court reasoned defendant had testified about his 2011 murder conviction, which was the basis for the prior strike allegation, and about his incarceration at the time of the incident. Over defendant's objection, the court also admitted a certified 969(b) packet that only included defendant's 2011 conviction for murder.

At defendant's request, the jury instructions included CALCRIM No. 3470 regarding self-defense. The jury instructions also included CALCRIM No. 2723 (battery by a prisoner on a nonprisoner), although the trial court denied defendant's objection and excluded the portion of that instruction that defines when a custodial officer is failing to perform his or her duties lawfully. The court reasoned that lawful performance was not at issue because there was no evidence that Officer McNamara was unlawfully performing his duties when defendant punched him in the mouth.

4

At defendant's request, the trial court struck the aggravating factor that defendant had served a prior prison or jail term pursuant to section 1170, subdivision (h).  (Rule 4.421(b)(3).)  The court reasoned defendant was still in prison, and the rule only described those who had served prior prison terms.  As to the prior strike and the aggravating factors, the court instructed the jury with CALCRIM Nos. 3100 (prior conviction: nonbifurcated trial), 3224 (great violence, great bodily harm, or high degree of cruelty, viciousness, or callousness), and 3234 (danger to society).

During closing argument, defendant argued he acted in self-defense because he honestly feared for his safety from the other inmates.  The prosecution responded that there was no evidence defendant feared an imminent danger, and belief in a future harm is not sufficient for self-defense.  Moreover, defendant's fear of harm was not reasonable, given that none of the officers posed any sort of danger to him.

During deliberation, the jury sent multiple questions to the trial court, including asking for the definition of "serious danger to society."  The court responded there was no distinct legal definition of the phrase, so it should be applied using its ordinary and everyday meaning.  The jury also asked for a readback of defendant's testimony, a readback of closing argument, and a copy of the transcript to read.  The court provided a readback of defendant's testimony, instructed there would be no readback on argument since it was not evidence, and stated no transcript would be provided.  In addition, the jury asked the court to define "moral turpitude," and the court responded that it meant "readiness to do evil."

The jury deadlocked as to the truth of the aggravating factor that defendant had engaged in violent conduct that indicated a serious danger to society (rule 4.421(b)(1)), and the trial court declared a mistrial as to that allegation.  At the prosecution's request, the trial court dismissed the allegation.

The jury found defendant guilty of violating section 4501.5.  The jury also found true the aggravating factor that the crime involved great violence, great bodily harm,

threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness. (Rule 4.421(a)(1).) The jury also found true that defendant had a prior strike.

Prior to sentencing, defendant requested to forgo a probation report, and the trial court agreed to not refer the matter. The court asked both parties to file sentencing briefs.

In his October 2023 sentencing memorandum, defendant asked the trial court to dismiss the entire action under section 1385. According to defendant, he had been sentenced in 2012 to two 25-years-to-life consecutive sentences, plus a nine-year and four-month consecutive determinate term. As such, defendant argued, he would already be serving his entire life in prison, making the current prosecution meaningless.

The prosecution asked the trial court to sentence defendant to the upper term of four years, doubled due to the prior strike. The prosecution argued there were no mitigating circumstances, and the jury had found true one aggravating factor. Dismissal was inappropriate because defendant should not be rewarded for his continued violent behavior.

During the November 2023 sentencing hearing, the trial court declined to dismiss the convictions pursuant to section 1385. The court reasoned that the efforts by the jury would be "rendered further irrelevant" if the case against defendant was dismissed. Moreover, defendant's multiple life sentences neither justified his behavior nor gave cause to permit defendant to evade punishment.

The court sentenced defendant to the upper term of four years, doubled to eight years due to the strike. (§§ 4501.5, 667, subds. (b)-(i), 1170.12.) The court reasoned the jury had found the aggravating factor to be true, and there were no mitigating factors. The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)), a corresponding $300 parole revocation fine (suspended unless parole is revoked) (§ 1202.45), a $40 court operations fee (§ 1465.8, subd. (a)(1)), and a $30 criminal conviction assessment fee (Gov. Code, § 70373).

Defendant timely appealed.

## DISCUSSION

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende*, *supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the opening brief. More than 30 days have elapsed, and we have received no communication from defendant.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

 

 

_____

HULL, Acting P. J.

 

We concur:

 

 

_____

MAURO, J.

 

 

_____

BOULWARE EURIE, J.

7